UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vinzella Trimuel,<br><br>  Plaintiff,<br><br>  v.<br><br>Chicago Housing Authority,<br><br>  Defendant. | Case No. 22 CV 03422<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vinzella Trimuel filed a six-count complaint against Defendant Chicago Housing Authority, alleging disability discrimination (Count I) and sex discrimination (Count II) in violation of the Fair Housing Act ("FHA"), unlawful discrimination in violation of the Americans with Disabilities Act ("ADA") (Count III), the Rehabilitation Act ("Rehab Act") (Count IV), and the Illinois Human Rights Act ("IHRA") (Count V), and promissory estoppel (Count VI). [27]. Defendant moves to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [28]. For the reasons explained below, this Court grants in part, and denies in part, Defendant's motion.

I.   **Factual Allegations**[1]

Plaintiff, a resident of Cook County, Illinois, is a survivor of sexual and domestic violence. [27] ¶¶ 1, 7.  Consequently, she suffers from multiple disabilities,[2] including anxiety, depression, and post-traumatic stress disorder.  *Id.* ¶ 1.

Defendant, an Illinois municipal corporation and public housing agency, which exists pursuant to the Housing Authorities Act, 310 ILCS § 10/1 *et seq.*, administers the Housing Choice Voucher Program ("Voucher Program") in the city of Chicago.  *Id.* ¶ 8.  The Voucher Program is "a federal rent subsidy program to assist low-income families to obtain decent, safe, sanitary, and affordable housing."  *Id.* ¶ 9.

Defendant formulated an administrative plan that lays out its policies for administering the Voucher Program, including the application process for families, the lottery-system placement on the waitlist, communication standards, and waitlist removal and reinstatement provisions.  *Id.* ¶¶ 11, 16–28.  The waitlist has not been open since 2014.  *Id.* ¶ 36.

Defendant is also a "covered housing provider" pursuant to the Violence Against Women Act, which imposes certain obligations on and provides certain options to Defendant.  *Id.* ¶¶ 29, 31, 32–34.

In 2008, Plaintiff and Plaintiff's sister applied to join the Voucher Program waitlist.  *Id.* ¶¶ 37–38.  CHA approved their applications and placed them on the Voucher Program waitlist.  *Id.* ¶ 39.  In 2010, following eviction from the property in

---

[1] For purposes of the motion to dismiss, the Court relies upon the facts set forth in the Complaint, [27].

[2] The terms "disability" and "handicap" are used interchangeably by the Court and construed consistently with each other.  *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001).

which she had been living, Plaintiff contacted Defendant to provide an update on her living situation and to inquire about her position on the waitlist. *Id.* ¶ 43. She learned from Defendant that she remained on the waitlist. *Id.* ¶ 44.

Also in 2010, Plaintiff got married and suffered domestic violence at the hands of her spouse. *Id.* ¶ 47. During that year, Plaintiff's housing situation remained unstable; she stayed at various times with her spouse, friends, family, and charitable organizations, including her parents' church and domestic violence shelters. *Id.* ¶ 48. Plaintiff, along with her caseworkers at one of the charitable organizations from which she sought living assistance, contacted Defendant multiple times to update Defendant on changes of address and received confirmation that Plaintiff remained on the waitlist. *Id.* ¶¶ 51–52.

Unbeknownst to Plaintiff at the time, she was removed from the waitlist by Defendant on March 29, 2013, purportedly for failing to complete the Wait List Update Survey; Plaintiff alleges she never received the survey. *Id.* ¶¶ 55–57.

Defendant opened the Voucher Program waitlist to new applicants between October 27 and November 24, 2014. *Id.* ¶ 58. Plaintiff, believing she was still in possession of a place on the 2008 waitlist, did not apply to the waitlist at this time. *Id.* ¶ 61. Then, in the summer of 2017, when she inquired about her status after Defendant notified her sister that the sister had reached the top of the waitlist, Plaintiff learned she had been removed from the waitlist. *Id.* ¶¶ 63–65.

On the advice of a member of Defendant's staff, Plaintiff requested a hearing; Defendant denied her request. *Id.* ¶¶ 67–69. On May 22, 2019, a representative of Defendant suggested to Plaintiff that she seek legal aid or visit a local office to seek

3

action. *Id.* ¶ 71. Instead, on July 12, 2019, Plaintiff filed suit against Defendant in the Circuit Court of Cook County. *Id.* ¶ 72. Subsequently, Plaintiff received a referral for a legal aid agency to assist with her suit. *Id.* ¶ 73.

On March 6, 2020, Plaintiff filed a reasonable accommodation request with Defendant, describing her suffering from domestic and sexual violence, outlining the effects of her disabilities, and noting that, to the extent she had failed to update her address, the failure stemmed from her disabilities and housing instability. *Id.* ¶¶ 74, 76. The request included an entreaty to reinstate Plaintiff on the waitlist at her previous position. *Id* ¶ 77.

Defendant's reasonable accommodation department approved this request, but its Voucher Program department declined to follow through, arguing that the waitlist that Plaintiff had previously occupied no longer existed, having been closed once the CHA worked through everyone on that list. *Id.* ¶¶ 78–80. CHA took the position that the 2014 waitlist constituted a new list, and adding Plaintiff to it was thus impossible. *Id.* ¶ 81. Defendant offered no alternative accommodation to Plaintiff. *Id.* ¶ 82.

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" to provide the defendant with "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

While "detailed factual allegations" are not required, the allegations "must be enough to raise a right to relief above the speculative level." *Id.* A complaint must

contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Threadbare "recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Importantly, a motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). This Court does not, however, accept a complaint's legal conclusions as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

### III. Analysis

Defendant moves to dismiss all six counts of the Complaint. With the above standards in mind, the Court examines each claim below.

#### A. Standing and Right to Relief

Defendants first argue that Plaintiff does not have a right to be restored to the waitlist because she has no "property interest to a place on any voucher wait list."

5

[32] at 2. But Defendant misunderstands Plaintiff's claims and the applicable law. Plaintiff does not bring a due process claim, alleging that Defendant unconstitutionally deprived her of a property interest. Plaintiff's suit is premised upon discrimination under the FHA, the ADA, the Rehab Act, and the IHRA. Thus, she does not need to have a property interest to seek relief. *Teran v. Village of Wheeling*, No. 13 C 6509, 2014 WL 2938397, at *7 (N.D. Ill. June 30, 2014) ("The FHA governs discriminatory conduct regardless of whether it occurs before or after a tenant or owner has acquired a property interest in a dwelling.") (citing *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009) (en banc)).

Defendant's claim that Plaintiff lacks standing because she "has always remained in the same position" also lacks merit. A plaintiff has Article III standing if she alleges: (1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent; (2) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision. *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)).

Defendant argues first that Plaintiff suffered no injury because none of the CHA's actions or decisions "has done anything to change" Plaintiff's position "as a non-participant in CHA's housing programs." [32] at 2. But Plaintiff *has* stated an injury: she had a spot on the CHA housing voucher waitlist and now, as a result of "CHA's purported actions, inactions, policies, procedures, and/or decisions," she does

6

not. *Id.* Her removal from the waitlist has "greatly exacerbated" the effect of Plaintiff's disabilities and housing instability. [27] ¶ 2. Plaintiff need not plead her harm with specificity; the "precise nature and extent" of her harm may be "ferreted out through discovery." *County of Cook v. HSBC North America Holdings, Inc.*, 136 F. Supp. 3d. 952, 959 (7th Cir. 2015).[3] Plaintiff has sufficiently pled an injury to establish Article III standing.

### B. Plaintiff's Disability Claims

The FHA, the ADA, the Rehab Act, and the IHRA all create a substantively identical right to reasonable accommodation. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002) (finding ADA and Rehab Act are substantively identical to FHA for reasonable accommodation analysis); *see also Geraci v. Union Square Condo. Ass'n.*, No. 15 C 2466, 2017 WL 372303, at *8 (N.D. Ill. Jan. 27, 2017) (finding IHRA right to reasonable accommodation is "similar in language and intent" to FHA). Thus, while the Court refers to the FHA throughout its analysis, it considers Plaintiff's reasonable accommodation claim under these four statutes together.

Under the FHA, it is illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of" that person's "handicap."

---

[3] Having said this, the Court can infer that Plaintiff, having requested a spot on the waitlist at the same time as her sister, who did receive a housing voucher, likely also would have received a housing voucher, especially because the CHA concedes that it cleared the prior waiting list.

7

42 U.S.C. § 3604(f)(2).[4] Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To plead a violation of the FHA based upon a refusal of reasonable accommodation, a plaintiff must allege: "(1) that the requested accommodation is reasonable, and (2) that the accommodation is 'necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market.'" *Affordable Recovery Housing v. City of Blue Island*, No. 12-cv-4241, 2016 WL 1161271, at * 13 (N.D. Ill. Mar. 23, 2016) (quoting *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006)).

Plaintiff alleges that she applied to CHA's waitlist for the Voucher Program in 2008 but that she was removed from the waitlist, without her knowledge, on March 29, 2013. [27] ¶¶ 37, 55. Plaintiff did not learn that CHA removed her from the waitlist until summer 2017. *Id.* ¶¶ 63–65. On March 6, 2020, after finally making her way to competent legal assistance, she submitted a reasonable accommodation request to CHA, detailing her disabilities, explaining how they impacted her ability to communicate with CHA, and requesting that CHA reinstate her to her prior position on the waitlist. *Id.* ¶¶ 74–77. Curiously, despite approving Plaintiff's

---

[4] The FHA defines handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment…." 42 U.S.C. § 3602(h). The definition of disability is substantively the same in the ADA, the Rehab Act and the IHRA. *See Oconomowoc*, 300 F.3d at 782 ("The definition of a disability under the ADA is substantively identical to that in the FHAA."); *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) (analyzing ADA and Rehab Act claims under the ADA's definition of disability); 775 ILCS 5/1–103(I) (defining disability as a "determinable physical or mental characteristic of a person, including…any mental psychological, or developmental disability."). Defendant does not contest that Plaintiff has adequately pled disability under the relevant statutes.

8

reasonable accommodation request on May 5, 2020,[5] CHA never reinstated Plaintiff to the waitlist, *id.* ¶¶ 78–79, and now challenges Plaintiff's right to that same relief.

### 1. *Statute of Limitations and Laches*

Defendant argues that Plaintiff's reasonable accommodation claim is untimely. The parties agree that the statute of limitations period for each of the relevant statutes is two years. 42 U.S.C. § 3613(a)(1)(A) (setting forth two-year limitations period for FHA claims); *Rutledge v. Illinois Dep't of Human Serv.*, 785 F.3d 258, 260 (7th Cir. 2015) (applying two-year limitations period to Rehab Act claims); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550–51 (7th Cir. 1996) (applying Illinois two-year personal injury limitations period to ADA claim); 775 ILCS 5/10-102(A)(1) (setting forth two-year limitations period for civil rights actions under IHRA). In her reply, Plaintiff contends that she brings suit based only upon CHA's denial of her reasonable accommodation request, which she submitted on March 6, 2020, and which CHA approved on May 5, 2020, but never implemented, thus effecting a denial by inaction. She filed an amended complaint on January 12, 2021 in state court setting forth the factual basis of her reasonable accommodation claims. [1] ¶ 2.

Courts rarely dismiss claims based upon affirmative defenses, such as statute of limitations, at the pleadings stage "since a complaint need not anticipate and overcome affirmative defenses." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). But dismissal may be appropriate "when the plaintiff pleads himself out of court by alleging facts sufficient to establish the

---

[5] The Complaint alleges that CHA approved Plaintiff's request on May 5, 2019. [27] ¶ 78. Upon review of the Reasonable Accommodation Decision Notice attached to the Complaint, the Court notes this is a typographical error, and the correct date is May 5, 2020. [27-1] at 17.

complaint's tardiness." *Id.* (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006)). That is not the case here.

According to Defendant, by the time Plaintiff sought reasonable accommodation in March 2020, her claims "were already time-barred" because she did not seek a reasonable accommodation from CHA until more than two years after she learned of her removal from the waitlist. [32] at 3. But she sues for denial of her accommodation request, not removal of her name, and Plaintiff filed suit against CHA for denying her accommodation request less than two years after she made the request. Thus, on the face of the Complaint, her claim remains timely.

Defendant argues that a request for reasonable accommodation must be made within the same two-year statute of limitations period that governs *claims* filed under the relevant statutes. But Defendant cites no authority for this proposition. Further, even if Plaintiff's claims were premised upon the CHA's decision to remove her from the waitlist in 2013, a plain reading of the Complaint reveals those claims are also timely: Plaintiff alleges that she did not learn of her removal from the waitlist until July 26, 2017, and she filed suit based upon that removal on July 12, 2019. The statute of limitations period does not begin to run until Plaintiff "knew or should have known" that CHA removed her from the waitlist. *Miles v. Trempealeau County*, 204 F. App'x. 570, 572 (7th Cir. 2006) ("A claim begins accruing from the date the plaintiff knew or should have known that he sustained an injury.").

Defendant argues that the allegations suggest Plaintiff learned of her removal in 2014, when she called to inquire about her status. But on a motion to dismiss, the Court will draw all reasonable inferences in *Plaintiff's* favor, not Defendant's.

*Tamayo*, 526 F.3d at 1081. Based upon the allegations in the Complaint, Plaintiff did not learn of her removal until 2017, and she filed suit less than two years later, within the limitations period.

Defendant also contends that Plaintiff's claims are barred by the doctrine of laches because Plaintiff waited "seven years, or at least three years, to make her 2020 reasonable accommodation request." [29] at 15. Like statute of limitations, laches is an affirmative defense, and dismissal is only appropriate if "the validity of the defense is apparent from the face of the complaint and so unmistakable that the action is frivolous." *Suggs v. United States*, 256 F. App'x. 804, 805 (7th Cir. 2007) (citing *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002)). To demonstrate that laches bars Plaintiff's claims, Defendant must show: (1) lack of diligence by the plaintiff; and (2) prejudice to the defendant. *Cannon v. Univ. of Health Scis./The Chicago Med. Sch.*, 710 F.2d 351, 359 (7th Cir. 1983).

Based upon the allegations in the Complaint, Defendant falls short of this standard. Defendant has failed to demonstrate that Plaintiff lacked diligence in bringing her claim as a matter of law. To the contrary, Plaintiff's Complaint details all the steps she took between 2017 (when she discovered her removal from the waitlist) through 2021 (when she filed a claim for denial of her reasonable accommodation request), including the steps she took to get reinstated on the waitlist and then to overturn the decision to remove her in the first instance. The allegations show that she demonstrated diligence in the face of an immovable maze of bureaucracy.

11

Defendant also fails to demonstrate prejudice. Plaintiff filed her request for reasonable accommodation in May 2020, which Defendant *approved*, and she filed suit less than two years later based upon Defendant's failure to provide the reasonable accommodation even CHA believed it should provide.

### 2. *Reasonableness and Necessity of Accommodation*

To state a claim for reasonable accommodation, Plaintiff must allege that: (1) she has a disability; (2) CHA was aware of her disability; and (3) CHA failed to reasonably accommodate her disability. *Elzeftawy v. Pernix Group, Inc.*, 477 F.Supp.3d 734, 762 (7th Cir. 2020). Defendant concedes that Plaintiff has a disability under the relevant statutes and that Plaintiff informed Defendant of her disability and requested reinstatement to the waitlist as a reasonable accommodation. Defendant also concedes that it did not reinstate Plaintiff to the waitlist despite approving her reasonable accommodation request on May 5, 2020. Yet Defendant now argues that Plaintiff's request for reinstatement is not only unreasonable but impossible because the 2008 waitlist has since been terminated and a 2014 waitlist has taken its place. CHA claims that it cannot possibly place Plaintiff "on a closed wait list" or "on the current wait list" when she has not applied to that list. [29] at 8. This argument boggles the non-bureaucratic mind.

The reasonableness of an accommodation turns on "a highly fact-specific inquiry," that considers "the needs of the parties." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). The inquiry thus remains inappropriate at the motion to dismiss stage. *See Nawrocki v. Oak Brook*

12

*Towers Condo. Ass'n.*, No. 20-cv-1517, 2021 WL 698485, at *5 (N.D. Ill. Feb. 23, 2021) (citing *Valencia v. City of Springfield*, 883 F.3d 959, 968 (7th Cir. 2018)).

Defendant argues that Plaintiff's request to be added to a waitlist to which she did not apply would "fundamentally alter CHA policy," would impose administrative burdens on Defendant, and would prejudice thousands of 2014 waitlist applicants. [32] at 7–8. Initially, had the CHA shown Plaintiff the same compassion it now claims for the 2014 waitlist applicants, this lawsuit would never have been filed. But, more importantly, a motion to dismiss is not the proper vehicle to raise fact-specific administrative concerns. Plaintiff has adequately pled that she suffered disabilities, requested a reasonable accommodation, and CHA denied that request (after approving it). Thus, she has stated a claim against CHA for refusing her reasonable accommodation request.[6]

### C. Sex-Based Disparate Impact under the FHA

Plaintiff also brings a claim for disparate impact under the FHA on the grounds that CHA's "inflexible policies for the HCVP waitlist have an unjustified disparate impact on women, as the majority of survivors of domestic violence are women." [31] at 9.

---

[6] Although the issue is not properly before the Court right now, Defendant's argument appears to be significantly undermined by the fact that it previously granted Plaintiff's request and approved her return to the waitlist. [27-1] at 17. Defendant's argument that reinstating Plaintiff to the waitlist would "fundamentally alter CHA policy" strains credulity. So too does the CHA's argument that putting Plaintiff on the 2014 waitlist would be an *impossible* administrative burden that would prejudice any 2014 waitlist applicants. Given the CHA's concession that it cleared all 2008 waitlist names, Plaintiff trumps anyone on the 2014 waitlist, and CHA's own regulations, which *require* it to reinstate applicants to the waitlist if they were removed due to disability, suggest it is in fact possible to return someone to the list. CHA suggests that the closing of the 2008 list and the opening of the 2014 list precludes the relief Plaintiff seeks. The suggestion remains implausible, as both lists provide the same benefit and presumably include largely the same information; certainly, the CHA has not explained why the waitlists are nonfungible.

13

To state a claim for disparate impact, a plaintiff must allege that the defendant's practices have a "disproportionately adverse effect" on the protected class "and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015). A plaintiff sufficiently pleads disparate impact under the FHA by alleging: (1) a statistical disparity; and (2) that the defendant maintained a specific policy; and (3) such policy caused the disparity. *Cty. of Cook v. Wells Fargo & Co.*, 314 F. Supp 3d 975, 990 (N.D. Ill. 2018) (citing *Inclusive Communities*, 576 U.S. at 541–42). In *Inclusive Communities*, the Supreme Court emphasized that a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." 576 U.S. at 543; *see also TBS Group, LLC v. City of Zion, Illinois*, No. 16-cv-5855, 2017 WL 5129008 (N.D. Ill. Nov. 6, 2017) (observing that causation "remains a key element of a disparate impact claim: without causation, there is no liability").

In her reply, Plaintiff highlights three specific CHA practices that disproportionately impact victims of domestic violence (and therefore, women): (1) making inconsistent representations as to what methods of communication with CHA are acceptable; (2) refusing to return applicants to their position on the HCVP waitlist despite the applicants' diminished ability to comply with CHA's changing communication requirements; and (3) removing waitlist applicants without adequate safeguards to determine whether applicants' communication troubles stem from domestic violence. [31] at 11.

14

While Plaintiff provides statistical evidence that women comprise the majority of domestic violence victims, [27] ¶¶ 83–88, she fails to sufficiently allege a causal connection between CHA's policies and their disparate impact on victims of domestic violence. Plaintiff alleges, in conclusory fashion, that these policies result "in female applicants on the CHA Voucher Program waitlist being disproportionately subject to a wide range of harms connected with removal from the waitlist," but provides no evidence to support the alleged causal connection. [27] ¶ 92. The FHA requires a more robust causal connection at the motion to dismiss stage. *See Inclusive Communities*, 576 U.S. at 542. Without pleading facts demonstrating that victims of domestic violence are disproportionately impacted by the CHA policies and connecting the disparity to the policies, Plaintiff cannot state a claim for disparate impact. *Id.* at 542–43.

### D. Promissory Estoppel

Plaintiff also brings a state-law claim for promissory estoppel, alleging that CHA representatives "confirmed multiple times between 2014 and 2017" that Plaintiff "was in good standing on the Voucher Program waitlist," when, in fact, CHA had removed her from the list in 2013. [27] ¶¶ 166–67. To state a claim for promissory estoppel, a plaintiff must allege that: (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied upon such promise; (3) plaintiff's reliance was expected and foreseeable by defendant; and (4) plaintiff relied upon the promise to her detriment. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 524 (Ill. 2009).

As an initial matter, under Illinois law, the doctrine of promissory estoppel "will not be applied to governmental entities absent extraordinary and compelling circumstances." *Matthew v. Chicago Transit Authority*, 51 N.E.3d 753, 780 (Ill. 2016). Such "extraordinary and compelling circumstances" are absent here, and, in any event, Plaintiff's allegations remain insufficient to state a promissory estoppel claim.

Plaintiff alleges that "CHA representatives consistently told Ms. Trimuel and her caseworkers," in "multiple phone communications," "that her file was updated, that she remained on the waitlist, and that she would receive a written communication when she reached the top of the waitlist." [27] ¶¶ 52, 62. To the extent these allegations suggest a promise, Plaintiff fails to allege any facts regarding any unambiguous promise, including when such conversations occurred and with whom. While Plaintiff does not need to plead detailed factual allegations regarding the alleged promise, she must at least plead sufficient facts to bring her claim for relief from "possible" to "plausible." *Twombly*, 550 U.S. at 557. Plaintiff's conclusory allegations that CHA representatives represented that she remained on the waitlist at some indeterminate point in time remain insufficient to state a claim for promissory estoppel.

## IV. Conclusion

For the reasons explained above, the Court grants in part, and denies in part ,Defendant's motion to dismiss, [28]. The Court denies Defendant's motion as to Count I (FHA – disability discrimination), Count III (ADA), Count IV (Rehab Act), and Count V (IHRA). The Court dismisses Count II (FHA – sex discrimination) and Count VI (promissory estoppel). Defendant shall answer the Complaint by October

16

23, 2023, and the parties shall file a joint status report by October 30, 2023, proposing reasonable case management dates. If at any time the parties agree that a settlement conference with the assigned Magistrate Judge could be productive, they should call chambers to so advise, and the Court will enter an appropriate referral order.

Dated:  September 27, 2023                                Entered:

                                                                               _____
                                                                               John Robert Blakey
                                                                               United States District Judge